UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER G. SMITH,<br><br>           Petitioner,<br><br>v.<br><br>D.K. SISTO et al.,<br><br>           Respondent. | No. CV-08-00104 CBM (HCx)<br><br>**ORDER DENYING PETITIONER'S WRIT FOR HABEAS CORPUS** |

The matter before the Court[1] is California prisoner Christopher G. Smith's (hereinafter, "Petitioner") Petition for Writ for Habeas Corpus (hereinafter, the "Petition") challenging the Board of Prison Term's (hereinafter, "the Board") denial of parole at his February 22, 2007, suitability hearing. For the reasons stated below, the Court **DENIES** the Petition for Writ for Habeas Corpus and **DISMISSES it with prejudice.**

### FACTUAL AND PROCEDURAL BACKGROUND

The instant Petition arises from the Board's 2007 decision finding Petitioner unsuitable for parole.

---

[1] The Honorable Consuelo B. Marshall of the Central District of California, sitting by designation. [Docket No. 13.]

### I. The Commitment Offense

In 1983, Petitioner was convicted of second degree murder pursuant to California Penal Code section 187. The evidence at trial established that Petitioner killed a man following a gang conflict; after a fight with a group of rivals, Petitioner went home, retrieved a shotgun, returned to the scene of the melee and fired his shotgun, killing one victim.

At his sentencing, Petitioner received an indeterminate term of 15 years to life plus a 2 enhancement for use of a firearm, totaling 17 years to life. Petitioner's Opening Brief at Ex. F, (hereinafter "TR") at p. 1. Petitioner began his term of imprisonment on January 3, 1984.

### II. The Hearing Finding Petitioner Unsuitable For Parole

On May 2, 2001, the Board found Petitioner unsuitable for early release for the third time. *Id.* at p. 18. In denying parole for five years, the Board specifically recommended that Petitioner become discipline free, upgrade vocationally and participate in self-help and therapy.

Then, on February 2, 2007, Petitioner received[2] a fourth parole hearing (hereinafter "the Hearing"). The Board again denied Petitioner parole, finding him to be an unreasonable risk to public safety. *Id.* at p. 34. The Board based its finding on the grounds that Petitioner had continued disciplinary problems with prison authorities and had failed to heed the Board's advice to upgrade vocationally and participate in self-help and therapy. *Id.* at pp. 34-38.

### II. The Petition Challenging The Board's Decision

Petitioner filed for writ for habeas corpus in California Superior Court, Kern County on July 11, 2007, on the same grounds claimed in the instant Petition. The court denied Petitioner's petition for writ for habeas corpus on September 5, 2007. Petitioner's Opening Brief at Ex. A. Next, on September 17,

---

[2] Petitioner received notice of the Hearing but did not attend. His lawyer attended on his behalf. TR. at pp. 3-7.

2007, Petitioner filed a writ for habeas corpus in the California Court of Appeals. The California Court of Appeals denied Petitioner's writ on September 27, 2007, without written explanation. *Id.* at Ex. B. Petitioner then filed a writ for habeas corpus with the California Supreme Court, which was also denied without written explanation, on December 12, 2007. *Id.* at Ex. C. Petitioner now seeks habeas relief in this Court.

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner argues he is entitled to habeas relief on the following grounds:

(1) The Board's 2007 finding that Petitioner was unsuitable for parole because he presents a current unreasonable risk to safety was unsupported by the evidence and is a deprivation of Petitioner's due process rights pursuant to the Fourteenth Amendment of the United States Constitution;

(2) The Board's 2007 finding that Petitioner was unsuitable for parole denied Petitioner equal protection of the law pursuant to the Fourteenth Amendment of the United States Constitution; and

(3) The Board's 2007 finding that Petitioner was unsuitable for parole was cruel and unusual punishment pursuant to the Eighth Amendment of the Unites States Constitution.

## STANDARD OF REVIEW

An application for a writ for habeas corpus on behalf of a person in custody pursuant to a state court judgment shall not be granted with respect to any ground adjudicated on the merits in state court unless that adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established law" refers to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74, (2006) (citation omitted).

A state court decision is "contrary to" the Supreme Court's clearly established precedents if it: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or, (2) "confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002). State court decisions that are not contrary to clearly established Supreme Court precedents warrant federal habeas relief "only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or based on 'an *unreasonable* determination of the facts.'" *Id.* at 11; *see also Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) (an unreasonable application of federal law is distinct from an incorrect application).

A state court decision is an "unreasonable application of" Supreme Court precedent if the court "correctly identifie[d] the governing legal rule but applie[d] it unreasonably to the facts" of the case. *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).

A reviewing federal court may "look through" "subsequent unexplained order[s]" to "the last reasoned state court" opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, that is the Kern County Superior Court decision, attached as Exhibit A to Petitioner's Opening Brief.

## DISCUSSION

The gravamen of Petitioner's writ for habeas corpus is that the quantum of evidence the Board relied on in denying him parole was constitutionally insufficient. Petitioner argues that the Board's denial of parole: (1) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it is unsupported by any evidence; (2) violates the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution; and (3) constitutes cruel and unusual punishment pursuant to the

Eighth Amendment of the United States Constitution.

The Court finds the Board's decision to deny Petitioner parole violated neither Petitioner's right to due process, nor his right to equal protection, nor his right to be free from cruel and unusual punishment. The Kern County Superior Court's decision affirming the Board's denial reasonably applied federal law.

## I.   Due Process

Because a California prisoner possesses a liberty interest in the grant of parole, *see e.g., McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole"), this Court must evaluate "whether the procedures attendant upon th[e] deprivation" of that right "were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Petitioner claims the Board's denial of parole was an arbitrary deprivation of his liberty interest. Petitioner is incorrect. Petitioner was not unconstitutionally deprived of his liberty interest in release on parole because some evidence supports the Board's finding that he was then unsuitable for parole.

### A. Legal Standard

In reviewing a writ for habeas corpus, the district court is not charged with determining, *post-hoc*, the petitioner's suitability for parole. Rather, the relevant inquiry is whether *some evidence* supports the Board's findings pursuant to California Penal code section 3041(b).

#### 1. *Some Evidence Standard*

A denial of parole violates due process only if it is not supported by "some evidence in the record" or is "otherwise arbitrary." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985).

The "some evidence" standard is minimal:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the

credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is <u>any evidence</u> in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (1985). A denial of parole does not violate due process if it has some indicia of reliability. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005). So long as the record is not so devoid of evidence, the denial is neither without support nor otherwise arbitrary. *Hill*, 472 U.S. at 457.

To assess whether a parole denial is based on "some evidence," a reviewing court must first look to the relevant state law to determine what findings are necessary to deem a prisoner unsuitable for parole. *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007). Then, it must assess the findings in a petitioner's case and determine whether the state court's decision that those findings were supported by "some evidence" was an unreasonable application of that standard. *Id.*

### 2. *Factors Relevant to Determining An Inmate's Suitability For Early Release*

In California, the Legislature has statutorily created the mechanism for determining a prisoner's suitability for parole. Section 3041(b) states the Board:

> shall set a release date unless it determines that the gravity of the offense of the current convicted offense or offenses, or the timing and gravity of the current to past convicted offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.

This standard requires the Board to consider pre and post-conviction factors in determining an inmate's present threat to society. Additionally, in California, title 15, Section 2402, of the California Code of Regulations states that "all relevant, reliable information available to the panel shall be considered in determining" a lifetime prisoner who was convicted of attempted murder's suitability for parole. Cal. Code Regs., tit. 15, § 2402. Furthermore, "circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." *Id.*

Section 2402 sets forth a non-exhaustive list of factors the board should

consider to determine an inmate's suitability for parole. Factors that weigh against parole include, *inter alia*, that a prisoner: (1) carried out the offense in an especially heinous, atrocious, or cruel manner– e.g., the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, involved an attack on multiple victims, involved abuse or mutilation of the victim, or the motive for the crime was inexplicable or trivial in relation to the offense; (2) has a prior record of violence; (3) has an unstable social history; (4) has a lengthy history of severe mental problems related to the offense; or (5) has engaged in serious misconduct in prison. Cal. Code Regs., tit. 15, § 2402(c).

Factors that weigh in favor of parole, on the other hand, include, *inter alia*, whether the prisoner: (1) has shown signs of remorse; (2) has no juvenile record; (3) has a stable social history; (4) is of an age that reduces the probability of recidivism; (5) committed the crime as a result of significant stress; (6) has made realistic plans for release or has developed marketable skills; or (7) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release. Cal. Code Regs., tit. 15, § 2402(d).

It is important to note, however, that the existence or nonexistence of any one factor is not dispositive. The key is how those factors interrelate and whether there is "some evidence" that shows the prisoner is *currently* dangerous to the public. *See Hayward v. Marshall*, 512 F.3d 536, 543 (9th Cir. 2008) ("Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made clear that the findings that are necessary to deem a prisoner unsuitable for parole are not that a particular factor or factors indicating unsuitability exist but that a prisoner's release will unreasonably endanger public safety."); *see also In re Lawrence*, 44 Cal. 4th 1181, 1212 (2008). Accordingly, the inquiry is whether "some evidence indicates a parolee's release unreasonably endangers public safety." *Hayward v.*

*Marshall*, 512 F.3d at 543.

### B. Analysis

Petitioner argues the Board's denial violated his right to due process because the decision was based exclusively on the gravity of Petitioner's commitment offense and ignored post-conviction factors showing that Petitioner did not present a threat to society, such as his rehabilitative efforts in prison, a psychological report finding him to be a below average risk to society, and his employment and housing plans. *See* Petitioner's Opening Brief at pp. 5-1, 5-3.

Pursuant to California Penal Code section 3041(b), a parole board is entitled to consider pre-conviction factors, such as the commitment offense, in determining a prisoner's suitability for release. A board's continued reliance on the immutable facts of a prisoner's commitment offense or pre-conviction criminal history as the *sole justification* for denying a prisoner parole *may* violate due process. *See Marshall*, 512 F.3d at 545; *see also Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Irons v. Carey*, 505 F.3d at 854; *See Biggs v. Terhune*, 334 F.3d 910, 915-917 (2003).

Here, however, there is no evidence the Board based its finding that Petitioner was unsuitable for parole *soley*[3] on Petitioner's pre-conviction factors. *See* TR at p. 35. Instead, as the Kern County Superior Court observed, the Board substantially relied on the following *post-conviction* considerations to determine Petitioner's unsuitability for parole: (1) Petitioner's lack of prison discipline; (2) Petitioner's lack of sufficient marketable skills; and (3) Petitioner's lack of participation in alcohol and substance abuse programs. *Id.* at p. 34 ("you had totally slighted what you have been told by the previous panel with regards to being involved in counseling and vocation and not getting anymore [disciplinary

---

[3] Although one of the Commissioners did note that "it appears that the offense was carried out in a calculated manner, such as an execution-style murder with the use of a shotgun and it showed a disregard for human suffering . . . I'm beginning to think that the motive here was inexplicable", TR at p. 36, no evidence was presented or adduced at the Hearing regarding Petitioner's commitment offense and no findings were made in regard thereto.

citations].") These factors constituted *some evidence* supporting the Board's decision denying Petitioner parole.

First, evidence that Petitioner continued to have disciplinary problems in prison was important to the Board's decision. Despite the Board's admonitions to Petitioner at his third parole hearing in 2001 not to get into any more disciplinary trouble,[4] disciplinary actions were filed against Petitioner in 2002 and 2006 and an administrative action was filed against him in 2002. TR at pp. 18-19. The Board characterized these infractions as Petitioner's "downfall," concluding that "you need to quit getting disciplinary actions . . . as long as you continue to get [disciplined], we are going to consider you a danger to society." *Id.* at p. 35.

Next, the Board cited Petitioner's lack of marketable skills and his failure to learn a vocation as additional reasons why he was unsuitable for parole. Although Petitioner adequately maintained kitchen and library work assignments in prison, the Board found that Petitioner "had programmed in a limited manner" because he never sought trade or vocational training. *Id.* at pp. 20, 29-30. As a result, the Board concluded that Petitioner may not be employable post-release. *Id.* at p. 37.

Third, the Board considered the fact that Petitioner had obtained "no self help" since his previous parole hearing in 2001 as another factor contributing to his unsuitability for parole. *Id.* at p. 29. The fact that Petitioner used alcohol while in prison but never participated in substance abuse programs such as AA or NA was, to the Board, proof that Petitioner "ha[d] failed to demonstrate any great evidence of positive change." *Id.* at pp. 37, 38.

Although evidence[5] that Petitioner had no juvenile convictions, received

---

[4] Prior to his 2001 parole hearing, Petitioner received twelve (12) several disciplinary actions, including an attempted assault on another inmate, Petitioner's Opening Brief at Ex. F pp. 32-33, 36, failure to obey orders, and failure to comply with DNA testing. TR at pp. 18-19. Therefore, as of his February 2, 2007, Hearing, Petitioner had a total of fourteen (14) disciplinary actions in his file.

[5] Although the Board noted that Petitioner's most recent psychiatric report summarily stated that Petitioner "has not shown his potential for dangerousness and violence while incarcerated . . . [and that is paroled] he would show the average low risk of dangerousness or violence when compared to other life inmates", TR at pp. 23-24, the Board found that the psychological report was not detailed enough to be of use. In particular, the report failed to address

positive in-prison job reviews, had reasonable post-parole plans, and was not a member of a prison gang were all positive indicators, *id.* at pp. 6, 18, 36 and 38, the Board nevertheless found "there are a multitude of things [Petitioner] need[s] to be working on" before he could be granted parole. *Id.* at p. 39. The Board concluded that, on balance, Petitioner was posed an unreasonable threat to society.

Because the Board's finding was supported by some evidence, Petitioner was not deprived of due process and the Kern County Superior Court's decision upholding the Board's denial was neither contrary to, nor involved an unreasonable application of clearly established Federal law as determined by the United States Supreme Court.

## II.  Equal Protection

Next, Petitioner claims the Board's denial, based upon California Penal Code section 3041, constituted "invidious discrimination," in violation of the Fourteenth Amendment's Equal Protection Clause. Petitioner's Opening Brief at p. 5-6. Petitioner is incorrect. Parolees are not members of a protected class and California's parole scheme, articulated in California Penal Code section 3041, passes rational scrutiny.

The need to ensure public safety provides the rational basis for section 3041. In denying him parole, the Board balanced Petitioner's individual liberty interest in being released against the potential threat he posed to society and concluded that society's concern for its citizens' safety outweighs Petitioner's liberty interest in parole. *See Irons*, 479 F.3d at 663.

Accordingly, the Kern County Superior Court's rejection of Petitioner's Equal Protection contention was a reasonable application of federal law. Therefore, Petitioner's Equal Protection challenge to the Board's denial of his parole fails and he is not entitled to habeas relief.

---

Petitioner's substance abuse problems in terms of his risk to society, an ordered a new psychiatric evaluation be completed. *Id.* at p. 37.

### III. Cruel And Unusual Punishment

Third, Petitioner claims the Board's failure to set a base term of confinement that is proportionate to his offense and subsequent denial of parole resulted in an excessive sentence in violation of the Eighth Amendment of the United States Constitution. Petitioner's Opening Brief at pp. 5-4, 5-5. Again, Petitioner is incorrect. The Eight Amendment does not mandate strict proportionality between crime and sentence. It forbids only "extreme sentences" that are "grossly disproportionate" to the crime. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (quotation omitted).

Contrary to Petitioner's assertion, a prisoner does not have a vested right to a sentence less than the statutory maximum. *U.S. v. Restrepo*, 946 F.3d 654, 659 (9th Cir. 1991) (defendant has a liberty interest in a fair sentence but does not have a liberty interest in a sentence below the statutory maximum) (citations omitted); *see also In re Dannenburg*, 34 Cal. 4th 1061, 1097 (2005). An indeterminate sentence is, effectively, a sentence for the maximum term "subject to the ameliorative power" of the parole board to set an earlier release date. *Id.* at 1098.

Petitioner was convicted of second degree murder with a firearm and was sentenced to an indeterminate sentence. Petitioner is thus subject to a maximum sentence of life in prison. *See id.* Because the board has not set his release date, Petitioner's sentence is the functional equivalent of a life sentence and does not exceed the statutory maximum. *See Dannenberg*, 34 Cal. 4th at 1097-98.

Accordingly, the Kern County Superior Court's rejection of Petitioner's Eighth Amendment contention was a reasonable application of federal law and habeas relief is not warranted.

### **CONCLUSION**

After independent review of the record including the Kern County Superior Court's decision affirming the Board's denial, this Court finds the California

court's adjudication did not involve an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and was not contrary to, or an unreasonable application of clearly established law, as determined by the United States Supreme Court. As a result, habeas corpus relief is not warranted and the Court **DENIES** the Petition and **DISMISSES it with prejudice**.

IT IS SO ORDERED.

DATED: October 9, 2009

By _____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE